## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | | |
|---|---|---|
| CRYSTAL TRAWICK, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Action File No. |
| v. | ) | |
| | ) | |
| CARMIKE CINEMAS, INC., | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
|     Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Crystal Trawick ("Plaintiff") or ("Trawick") files this her Complaint for relief against Defendant Carmike Cinemas, Inc., ("Carmike" or the "Company"), and shows the Court as follows:

## PRELIMINARY STATEMENT

1.

This action seeks declaratory, injunctive and equitable relief; money damages, compensatory, liquidated and punitive damages, costs and attorney's fees for the wrongful and illegal acts engaged in by Defendant against Trawick. These wrongful acts include, but are not limited to, a practice of disparate treatment based on sex, discrimination based on sex in compensation, conditions of employment,

assignment and failure to promote under Title VII of the Civil Rights Act of 1964 and other laws; for violation of the Equal Pay Act in paying her lower wages than male comparators; for retaliation in the form of withholding compensation, promotion, harassment, infliction of adverse terms and conditions of employment and other similar acts under Title VII of the Civil Rights Act of 1964 and other laws; for interference with her Family and Medical Leave Act leave after the birth of her child; and for unpaid overtime under the Fair Labor Standards Act, and state law claims.   Defendant's wrongful and illegal conduct is willful, intentional, and egregious.

## JURISDICTION AND VENUE

2.

This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S. C. §§ 2002e, et seq., as amended, the Civil Rights Act of 1991, 42 U.S.C. § 1981a (collectively "Title VII"); the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 28, et seq., ("FMLA"); and the Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq. ("FLSA").

3.

The Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1343 (a)(4), 29 U.S.C. §§ 206(d), 216(b), and  626(c)(1).

4.

Jurisdiction over the Title VII and EPA federal claims is appropriate because on April 14, 2016, within 180 days of the last act of discrimination, Trawick filed EEOC Charge No. 410-2016-03424 regarding discrimination in violation of Title VII and violation of the EPA.  A true and correct copy is attached hereto as Exhibit "A" and by this reference made a part hereof.  On September 5, 2016, the EEOC issued a Notice of Right to Sue. A true and correct copy is attached hereto as Exhibit "B" and by this reference made a part hereof.  Trawick timely filed this action within 90 days of receipt of that Notice.  All causes of action that arose out of the Charge are properly included in this Complaint.  All statutory prerequisites have been satisfied prior to bringing this suit.

5.

This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §§ 1367.

6.

Liquidated damages are sought pursuant to 29 U.S.C. §§ 216(b), 260, 626(b), and 2617(a).  Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1981a, 29 U.S.C. §§ 216(b), 260, and 2617(a), and state law.  Attorneys' fees and expenses of litigation are sought pursuant to 42 U.S.C. §§ 1988, 2000e-5(k), 29 U.S.C. §§ 216(b), 260, 2617(a), Fed. R. Civ. P. 54, and state law.  Equitable relief is sought under 29 U.S.C. § 2617(b), and state law.

7.

Venue properly lies in the Middle District of Georgia, Columbus Division, pursuant to 28 U.S.C. § 1391(b) because the claim arose in this district.

**PARTIES**

8.

Plaintiff Crystal Trawick, female, is a citizen and resident of the United States and Muscogee County, Georgia.

9.

Defendant Carmike is a corporation engaged in interstate commerce and authorized to do business in the State of Georgia, with its principal place of business in Georgia at 1301 1st Avenue, Columbus, Georgia 31901.  Carmike is subject to the jurisdiction and venue of this Court and may be served by serving its

registered agent:   CT Corporation System, 1201 Peachtree St., N.E., Atlanta, Georgia 30361.

10.

Carmike employs more than 500 employees and at all times relevant hereto was and is an employer within the meaning of Title VII, the EPA, the FMLA, and the FLSA.

## STATEMENT OF FACTS

11.

Trawick began her employment with Carmike on or about July 1998, in an entry level operations position in the Arcade department..   During her tenure, she was promoted nine times within operations and two positions outside the department to include the film department and marketing where her responsibilities were significantly increased to further her experience. Upon information and belief, this experience made Trawick one of only two employees within the company with successful experience in operations, film buying, and marketing.

12.

In October 2012, Fred Van Noy approached Trawick about joining Carmike's Marketing Department.  Trawick interviewed with Terrell Mayton, then Marketing Director, and Carmike moved her to a position for her in the Marketing

5

Department. Carmike did not give her a job title for several months and denied her a raise.  Mayton stated that a recent pay increase Trawick earned through performance in her prior department justified not giving her a raise.  Carmike did not give Trawick any increase in compensation for her new responsibilities.

13.

After several months of not having a job title or specific responsibilities, Van Noy set a meeting to include Mayton and Shannon Sailors, Director of Advertising ("Sailors"). During this meeting Trawick was given the title of Marketing Project Manager and a set of responsibilities.  After Sailors was dismissed from the meeting, Van Noy told Trawick she would be evaluated in 6 months and based on accomplishments would be considered for a Director title.  Van Noy never conducted the evaluation nor did Trawick received the promotion to Director or the title.

14.

In the summer of 2013, Terrell Mayton, the Marketing Director to whom Trawick reported, was terminated.  Trawick was given all of Mayton's job duties with the exception of a few of Mayton's advertising responsibilities including invoice approval authorization, which were assigned to Sailors.

15.

Trawick reported to Van Noy as did the male Directors, including Sailors. Trawick was the only female reporting directly to Van Noy at time of her dismissal. Unlike her male counterparts, Carmike denied her the title of Director as well as an adjustment of her salary to commensurate with her new Director-level responsibilities.

16.

At all times relevant hereto, Carmike was aware of the discrepancy in pay between Trawick and comparable males, and, upon information and belief, between female employees in the same class or level as males.

17.

At all times relevant hereto, Carmike was aware of the discrepancy in pay between Trawick, a female, Sailors, a male comparator, and other male Directors.

18.

In October 2013, Van Noy conducted Trawick's annual evaluation and told her that she had a "surprisingly low salary." He apologized and stated he intended to do something about the low salary, but failed to do so.

19.

Upon information and belief, compensation Carmike paid to male comparators, including salary and bonuses, exceeded the compensation Carmike paid to Trawick.

20.

Trawick performed her job satisfactorily, consistently receiving positive performance evaluations.

21.

In e-mails from 2015, Passman commented: "A star is born ….. Great interview" regarding a television interview, and "That's a wonderful acknowledgment of crystal's [sic] accomplishments and value at Carmike and the community" concerning participating in a college panel discussion for Women's History Event.

22.

Van Noy wrote in e-mails in 2015:  "We are fortunate to have Crystal as part of our team" and "Superwoman down for the count" regarding illness as well as multiple "good job" comments regarding her performance in executing her marketing duties.

23.

Trawick also received recognition outside of Carmike, but which benefitted Carmike.  Box Office magazine honored Trawick as one of only ten women for the 2015 Women in Exhibition and Distribution for her accomplishments in the industry, all of which occurred while she was employed by Carmike. She was named "Top Five Under 40" for a publication noting her success as a representative of Carmike. She was also elected to serve in a leader capacity or on the advisory board for nine organizations representing the only Carmike employee at time of her commitments.

24.

Even while receiving positive evaluations and peer recognition, Van Noy stated he would never promote Trawick to a Director position unless forced to do so.

25.

On or about March 25, 2015, Trawick met with the Defendant Passman regarding certain comments she planned to make in a presentation regarding that women had to work harder and do more in the industry in which Carmike operated. Passman approved the comments, stating: "Unfortunately there is a glass ceiling for women in the industry.  It is unfortunate, but true. It is tougher for them."

26.

Trawick later met with Van Noy and discussed her low pay and asked about the opportunity to be considered for Director's title based on 3 years running the Marketing Department successfully while reporting to him. She also discussed that her accountabilities and responsibilities were the same as Sailors.

27.

Van Noy told Trawick Carmike was unsure as to whether they would hire a Marketing Director or Chief Marketing Officer ("CMO") based on the size of the company. Trawick noted that a Marketing Director, and all Directors in the department, would still report to a CMO and therefore considering her for Director of Marketing would not impede that decision.  Van Noy said she would not be considered for the position of CMO because she did not have a degree. He then asked her to provide a list of her accomplishments so he could discuss her potential promotion to Director in the next executive meeting. To her knowledge, this conversation never took place.

28.

Upon information and belief, Van Noy and Carmike never intended to consider her for Director because she was female.

29.

In or about September 2015, Trawick met with Passman, Trawick to discuss an employment opportunity outside Carmike. Trawick specifically asked Passman if she had "hit her glass ceiling" at Carmike. Passman told her she had not hit her glass ceiling and should stay with Carmike. He still wanted her to be part of the senior managing team one day, which she understood was an effort to placate her and not address the issue of discriminatory treatment.

30.

In the same meeting, Trawick discussed her low salary and lack of title compared to outside opportunities, and that she had discussed these issues with Van Noy.  Passman agreed that her salary was low and she should be compensated for everything she did. While discussing the lack of a Director's title as well as her low pay, Passman informed Trawick that to be a viable candidate in management, "the way that men look at it, you are going to have to complete your education.  You are going to have to have a degree."

31.

Because Trawick already had an Associate's Degree, upon information and belief, Carmike never intended to give her any Director title or promote her to any management position because she was female.

32.

Carmike willfully held Trawick to a higher standard and discriminated against Trawick on the basis of her gender as certain males in management at Carmike, including Director positions and higher, do not have degrees.

33.

Trawick did not report the issues to Human Resources because the persons involved and to whom she complained about unequal pay and title for her and males were officers of the Company and she reasonably believed such reports would negatively affect her job.  She also believed that Passman and Van Noy would honor their promises to address the pay and title issues, but upon information and belief, now believes they never intended to honor such promises because she is female.

34.

Sailors, a comparator and a Director in management, does not have a Bachelor's or even an Associate's Degree.

35.

Upon information and belief, Van Noy, the Chief Operating Officer, and in management, does not have a Bachelor's Degree.

36.

Only 2 months after Trawick's meeting with Passman in September in which Carmike management informed her female employees were held to a higher educational standard then male employees for management positions, and she protested the discriminatory standard, she was called into a meeting with Van Noy and Fred Friedel, Compliance Director, regarding charitable donations and the use of the company credit card.

37.

Only after 2 months in which she once again questioned Carmike's failure to promote her or provide a salary comparable to male counterparts, she was questioned concerning the performance of her duties regarding these expenses. Trawick reminded the men that all charity sponsorships she proposed for approval, were approved by Sailors, Lisa De La Cruz, and/or Fred Van Noy. In addition, once approved, all charity sponsorship invoices were then approved by Sailors prior to payment by accounts payable. Van Noy had to approve, and did approve, her monthly expense reports showing each expense with attached receipts.

38.

Trawick and other employees in the advertising and marketing departments followed this practice for approximately two years.  Only the day before this meeting did Carmike send out an email notifying corporate employees as to the practice to require executive approval of sponsorships. Only during the investigation did Carmike send an email to employees with company cards regarding specific regulation changes or updates to card usage with note to items addressed in Trawick's investigation.

39.

At the end of the November 2015 meeting with Van Noy and Friedel, Van Noy informed Trawick that her actions were being investigated and stated she was not to "poll her peers during the process".  Trawick understood that she was not to ask her peers any questions that would impede the investigation, and did not "poll her peers" as she understood the directive.  Van Noy told her not to stress about it and not to lose any sleep over it because it was going to be fine as they concluded meeting.

40.

No one told her it was confidential, not to talk about the investigation, not to find answers to their questions about the expenses, not to discuss with her subordinates.

41.

The next day Trawick was called into Van Noy's office and asked whether she had spoken to anyone about the investigation.  She said she had spoken to a subordinate.  He then asked if she had followed his instructions.  Trawick said "I did not poll my peers".  He said you know what I mean and asked her if she thought she followed his instructions. She replied, "As I now understand you, technically you could say no."

42.

A few days later, she was again called to Van Noy's office who stated she was being terminated for "insubordination" because of his instructions not to "poll her peers."  Carmike terminated her employment November 17, 2015 on the pretext of insubordination.

43.

Carmike discriminated against Trawick in investigating her and not investigating Sailors, a male comparator, who actually approved all invoices prior to payment for marketing and advertising, as well as for the non-profit funding.

44.

Carmike discriminated against and subjected Trawick to the adverse action of termination in terminating her and not terminating Sailors, a male comparator, who actually approved all invoices prior to payment for marketing and advertising, as well as for the non-profit funding.

45.

Carmike's allegations of Trawick's misconduct are pretextual, an excuse to terminate her, and in retaliation for her questioning and complaints concerning her unequal wages, title, standards, terms and conditions of employment, and benefits as compared to her male comparators.

46.

After Trawick's termination, Carmike replaced her with a male from outside the company.  Carmike changed the title of the position and expanded its duties replacing the role she was performing for the Marketing Department with a male.

47.

Defendant through its agents stated at community meeting that Trawick was being investigated for misappropriation and misuse of company assets.

48.

Defendant and its agents allowed employees to disseminate false and misleading communication about Trawick, including but not limited to, that Trawick was terminated for misappropriation of funds.

49.

Defendant and its agents disseminated and allowed employees to disseminate personal, private and confidential information about the investigation and Trawick's termination contrary to Carmike's personnel policies.

50.

Defendant and its agents made or allowed these statements knowing she lived and worked in a "small community", and it would be upsetting to her, harm her, and cause her emotional distress, and negatively impact her ability to find other employment.

51.

As a result of the conduct of Defendant and its agents and employees, Trawick was not hired for certain jobs.

52.

At all times material to this litigation, Carmike had reasons to know, or through the exercise of due diligence and care should have known, of the discriminatory and retaliatory acts of its agents and employees.   Despite this knowledge, Carmike failed and even refused to intervene.

53.

The unlawful, discriminatory and retaliatory actions by Defendant and its agents and employees were done during and within the scope of their agency and employment.

**ADDITIONAL FACTS REGARDING FLSA CLAIM**

54.

Plaintiff was an "employee" as defined under FLSA § 3(e), 29 U.S.C. § 203(e) of the Defendant.

55.

Defendant is an "employer" within the definition of FLSA § 3(d), 29 U.S.C. 203(d), and is not an exempt employer under the FLSA.

56.

Defendant controlled all material aspects of the employer-employee relationships of Carmike, including decisions regarding compensation, job classification, duties, responsibilities, qualifications and training.

57.

Defendant is a private employer engaged in interstate commerce.

58.

At all times relevant to this action, Trawick was a non-exempt employee within the meaning of the FLSA.

59.

Carmike misclassified Trawick as an exempt employee at all times relevant to this action.

60.

Plaintiff's primary job duties and responsibilities during the relevant period after Mayton was terminated as Marketing Director consisted of routine work of performing marketing, attending meetings, traveling, marketing presentations, executing and maintaining program management processes and disciplines in the areas of social media program schedule, national philanthropic campaigns, gift card programs, theatre openings, special film series, community events, group sales

programs, customer rewards programs, theatre data base quality management, community communications management, risk/issue management, change management, customer service response management, and marketing department employee interviews, hiring, training, and evaluations.

61.

Throughout Trawick's employment in Carmike's Marketing Department, she was required to work over 40 hours per week without being paid overtime.

62.

Carmike and its agents and employees knew of and required Trawick's overtime work.

63.

Trawick was responsible for evening, weekend, and otherwise off-hours events in addition to her regular office hours.  Trawick can show 256 hours of overtime in 2013, 236 hours of overtime in 2014, and 376 hours of overtime in 2015.

64.

Carmike willfully and knowingly violated the FLSA as Trawick's key responsibilities included these evening and weekend events of which she regularly reported to Van Noy..

## ADDITIONAL FACTS RE FMLA CLAIM

65.

At all times relevant to this action, Trawick was an eligible employee within the meaning of the FMLA.

66.

Trawick provided Carmike with at least 30 day notice of the expected birth of her child. However, due to unforeseen medical issues, was put on bed rest by physician 3 weeks prior to delivery. This notice was sufficient to make Carmike aware that the Trawick needed FMLA-qualifying leave, and the anticipated timing and duration of the leave. Carmike did not give notice of need for certification by health care provider and consequences of employee's failure to submit same.

67.

In late April 2014, Trawick took FMLA leave for the birth of her child.

68.

Contrary to the FMLA leave protections provided for the birth of a child, Trawick's supervisor, Van Noy, required her to work during her FMLA leave. He e-mailed her, called her, and requested she be on conference calls, conduct website development research and contract development for two vendors as well as

their theatre opening planning and company press releases, interviewing employees at the office, and all while on FMLA leave. Due to the pressure to work while on leave and to return to work early, Trawick returned to work three weeks early and did not take the full twelve weeks of FMLA leave.

69.

Carmike willfully and knowingly violated the FMLA by requiring Trawick to work during her leave.

70.

Not only was she required to work during her FMLA leave, Carmike did not provide Trawick with her bonus structure until half-way through the year, while on maternity leave.  She was expected to meet it for the entire year and during her FMLA leave.

71.

As a result of Defendant's unlawful, discriminatory and retaliatory actions and practices, Trawick has suffered and continues to suffer resulting damages.

72.

Trawick, as a female employee of Carmike, was discriminated against and retaliated against based on her sex in pay, promotion, standards, and terms and

conditions of employment as compared to similarly situated and less qualified male employees.

73.

Carmike's actions were in violation of Title VII, the EPA, the FMLA, and the FLSA.

## COUNT I

## DISCRIMINATION IN VIOLATION OF TITLE VII

74.

Trawick hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

75.

Carmike's disparate treatment of Trawick, because of her sex, in pay, promotion, terms and conditions of employment, and conduct violates the statutory provisions and protections of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

76.

Carmike's acts and conduct constitute willful and intentional discrimination. Carmike engages in its discriminatory practices with malice or with reckless indifference to the protection of Trawick.

77.

As a result of Carmike's unlawful acts, Trawick has suffered damage and is entitled to the relief as set forth in the Prayer for Relief below.

## COUNT II

## RETALIATION IN VIOLATION OF TITLE VII

78.

Trawick hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

79.

Defendant Carmike acted in reprisal and retaliation against Trawick for challenging its unlawful actions in violation of Title VII, 42 U.S.C. § 2000e-3(a), as amended.

80.

Trawick was engaged in a protected activity by challenging the unlawful practices of Carmike, including but not limited to, her repeated requests for compensation comparable to her male colleagues, inquiry as to a glass ceiling at Carmike, and repeated requests to be evaluated for a Director's position, and for Director's title.  Trawick addressed these issues directly with Van Noy, to whom she directly reported, and Passman.

81.

Carmike failed to adequately investigate the validity of or remedy the Trawick's charges that her disparate treatment was based on her gender.

82.

Thereafter, Carmike through its officer, agents, and employees retaliated against Trawick for her protected legal actions in violation of Title VII, 42 U.S.C. § 2000e-3(a), as amended.

83.

Carmike's willful unlawful acts of retaliation have demonstrated its malice and reckless indifference to the right of Plaintiff to work in an environment free from retaliation for challenging unlawful actions, thereby entitled Plaintiff to punitive damages.

## COUNT III

## VIOLATION OF THE
## FAMILY AND MEDICAL LEAVE ACT

84.

Trawick hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

85.

Carmike willfully and unlawfully interfered with Trawick's exercise or attempted exercise of her right to protected leave for the birth of her child by requiring her to work during her leave in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 28, et seq..

86.

Trawick was prejudiced and suffered damages by Carmike's willful and unlawful interference of her rights under the FMLA and is entitled to the relief as set forth in the Prayers for Relief below.

## COUNT IV

## VIOLATION OF THE EQUAL PAY ACT

87.

Trawick hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

88.

Carmike discriminated against Trawick in violation of the Equal Pay Act, 29 U.S.C. § 206(d) by compensating male employees more than Trawick for equal work in positions the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

89.

By reason of Carmike's willful payment of a lesser wage and compensation to Plaintiff than the company paid to males in similar positions, willful failure to consider Trawick for positions for which she was fully qualified or was already performing without comparable compensation, which Carmike eventually hired with a male, Trawick has suffered damage and is entitled to recover such damage, including but not limited to an amount equal to the pay rate difference between the amount that Carmike compensated Trawick's male counterparts and the amount that Carmike paid to Trawick, as set forth in the Prayer for Relief.

## COUNT V

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

90.

Trawick hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

91.

Pursuant to FLSA § 16, 29 U.S.C. § 216, Plaintiff brings this lawsuit to recover her unpaid overtime differential or back pay, liquidated damages in an equal amount, prejudgment interest, attorneys' fees, front pay and the costs of this

litigation, and any and all other allowable damages; and Plaintiff is entitled to all such damages.

92.

Trawick consistently worked more than 40 hours per week. Carmike knew of the overtime work yet failed to compensate Trawick for time worked in excess of 40 hours per week.

93.

Defendant willingly and repeatedly violated the FLSA by failing to pay overtime wages equal to one and one-half (1 ½) times Trawick's base pay for those hours over 40 Trawick worked each week.

94.

Defendant's violations of the FLSA were intentional, willful and/or Defendant showed reckless disregard whether its conduct violated the FLSA, thereby entitling Plaintiff to recover liquidated damages as provided for by the FLSA.

95.

Defendant's failure to pay overtime to Plaintiff was and is intentional and willful, so that the three (3)-year statute of limitation applies to this action.

96.

Defendant is liable for the amounts due for violations of the FLSA.

97.

Trawick was prejudiced and suffered damages by Defendant's willful failure to compensate her overtime, and Trawick is entitled to the relief as set forth in the Prayers for Relief below in an amount to be proven at trial.

**STATE LAW CLAIM**

**COUNT VI**
**NEGLIGENT RETENTION**

98.

Trawick hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

99.

Carmike knew, or, in the exercise of ordinary care, should have known, that is employees were engaging in, and had previously engaged in, unlawful conduct against Trawick.

100.

Despite Carmike's actual or constructive knowledge of the propensities of those employees to engage in such unlawful conduct, Carmike negligently retained those employees.

101.

As a direct and proximate result of Carmike's negligent retention of those employees, Plaintiff was unlawfully treated in the workplace, was damaged, and is entitled to the relief set forth in the Prayer for Relief.

102.

Carmike acted intentionally, willfully, with malice and in reckless or conscious disregard of Plaintiff's rights and the consequences of its actions, and Plaintiff is entitled to recover punitive damages for such actions under Georgia law.

## COUNT VII

## EXPENSES OF LITIGATION
## AND ATTORNEY'S FEES UNDER STATE LAW

103.

Trawick hereby re-alleges all preceding paragraphs of this Complaint as if each and every paragraph had been fully and completely re-stated herein.

104.

At all times relevant hereto, Defendant has acted in bad faith, have been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense. Plaintiff is entitled to recover her expenses of litigation, including reasonable attorneys' fees from Defendant for her state law claim.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Trawick respectfully invokes the powers of this Court and prays for the following:

a) That the Court grant trial by jury;

b) That Trawick have and recover from Defendant Carmike all amounts available under Title VII including but not limited to back pay, front pay, compensatory damages, liquidated damages, damages for mental anguish, benefits, and punitive damages in an amount sufficient to deter such discriminatory and retaliatory conduct in the future;

c) That Trawick have and recover from Defendant Carmike all amounts available under the EPA including but not limited to, compensatory and consequential damages, making Trawick whole by providing back pay and reimbursement measured by

the difference in the rate of pay received by Trawick and the rate of pay of male employees paid in violation of the EPA, and 42 U.S.C. § 1981, liquidated damages, punitive damages in an amount sufficient to deter such discriminatory and retaliatory conduct in the future;

d)      That Trawick have and recover from Defendant all amounts available under the FLSA including but not limited to, compensatory and consequential damages, making Trawick whole by providing back pay and reimbursement measured by for each overtime hour she worked calculated at one and one-half times the normal hourly rate; liquidated damages equaling 100% of overtime due; pre-judgment and post-judgment interest to Trawick on any of the above amounts; the costs of this action, including reasonable attorneys' fees;

e)      That Trawick have and recover from Defendant Carmike all amounts available under the FMLA including but not limited to, lost wages; liquidated damages equaling 100% of the sum of damages due under lost wages or compensation for care; pre-judgment and post-judgment interest to Plaintiff on any of the

above amounts; the costs of this action, including reasonable attorneys' fees; and such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

f)   That Plaintiff have judgment on her state law claim against Defendant in an amount to be determined by the enlightened conscience of an impartial jury.

g)   That Plaintiff have judgment for punitive damages on her state law claims against each Defendant in an amount sufficient to deter such wrongful and unlawful conduct in the future.

h)   That Plaintiff be awarded her expenses of litigation, including her reasonable attorneys' fees on her state law claim against Defendant; and

i)   That the Court grant such other and further relief as it deems just and proper.

**RESPECTFULLY SUBMITTED**, this 7th day of December 2016.

/s/     Mary A. Prebula
Mary A. Prebula
Georgia Bar No. 586743
PREBULA & ASSOCIATES LLC
Suite 200 The Crescent Building
3483 Satellite Boulevard, N.W.
Duluth, Georgia 30096
(770) 495-9090
(770) 497-2363 fax
mprebula@prebulallc.com

M:\Documents\Trawick\Pleadings\Complaint 2016 1206 FINAL.docx