IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CRYSTAL TRAWICK,              *

    Plaintiff,            *

vs.                          *          CASE NO. 4:16-CV-380 (CDL)

CARMIKE CINEMAS, INC.,        *

    Defendant.            *

_____

O R D E R

The jury returned a verdict in favor of Crystal Trawick and against her former employer, Carmike Cinemas, Inc., on her Title VII sex-based wage discrimination claim, awarding her $67,117.79 for lost pay, $100,000.00 for emotional pain and mental anguish, and $1 million in punitive damages. Based on Title VII's damages cap, the Court reduced the award of emotional distress damages and punitive damages to $300,000.00 and entered judgment in favor of Trawick and against Carmike in the amount of $367,117.79.

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Carmike renews its motion for judgment as a matter of law that it made at trial.[1] As discussed below, Trawick presented sufficient evidence at trial to support the jury's

---

[1] In ruling on a renewed motion for judgment as a matter of law, the Court may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b). Here, Carmike did not make an alternative or joint request for a new trial under Rule 59.

verdict. Carmike's motion (ECF No. 221) must therefore be denied.

As the prevailing party, Trawick is entitled to recover her attorney's fees. Her motion for attorney's fees (ECF No. 203) is granted to the extent that the Court awards Trawick attorney's fees in the amount of $659,433.27. Trawick's motion for nontaxable litigation expenses (ECF No. 223) is denied because it was untimely. But, she may recover taxable costs in the amount of $24,239.85. An amended judgment shall be entered in favor of Trawick against Carmike in the amount of $1,050,790.91.

DISCUSSION

## I. Carmike's Renewed Motion for Judgment as a Matter of Law

Carmike is entitled to judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for" Trawick on her Title VII wage discrimination claim. Fed. R. Civ. P. 50(a) & (b). Overturning a jury verdict is a substantial burden. "Judgment as a matter of law is appropriate 'only if the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict.'" *Equal Emp't Opportunity Comm'n v. Exel, Inc.*, 884 F.3d 1326, 1329 (11th Cir. 2018) (quoting *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1275 (11th Cir. 2008)). If Trawick presented "enough evidence

to create a substantial conflict in the evidence on" the essential elements of her claim, Carmike's Rule 50(b) motion must be denied. *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005).

In evaluating Carmike's Rule 50(b) motion, the Court must "consider all the evidence, and the inferences drawn therefrom, in the light most favorable to" Trawick. *Exel, Inc.*, 884 F.3d at 1329 (quoting *Goldsmith*, 513 F.3d at 1275). The Court may "not second-guess the jury or substitute [its] judgment for [the jury's] judgment if [the jury's] verdict is supported by sufficient evidence." *Id.* (quoting *Lambert v. Fulton Cty.*, 253 F.3d 588, 594 (11th Cir. 2001)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.

Carmike argues that no reasonable jury could have reached the verdict delivered in this case based on the evidence presented at trial. Carmike misunderstands the evidentiary record or the legal standard for judgment as a matter of law.

Although the evidence was certainly in conflict and a jury could have found in Carmike's favor, there was ample evidence to support the jury's conclusion that Carmike paid Trawick lower compensation than a similarly situated male employee and that Carmike used Trawick's sex as a motivating factor when it made decisions regarding Trawick's compensation. Thus, that verdict cannot be disturbed. Carmike's motion for judgment as a matter of law on Trawick's Title VII wage discrimination claim is denied.[2]

Carmike contends that even if the evidence supported the jury's verdict awarding compensatory damages to Trawick, no evidence existed from which a reasonable jury could find that punitive damages were appropriate. Defendant acknowledges that the Court properly instructed the jury on punitive damages as

---

[2] In a footnote of its Rule 50(b) motion, Carmike points out that in finding against Trawick on her Equal Pay Act claim, the jury concluded that Trawick had not proved that Carmike paid her a lower wage than a male employee for equal work on jobs requiring substantially equal skill, effort, and responsibility under similar working conditions. To the extent that Carmike is attempting to argue that this finding is inconsistent with the jury's verdict on Trawick's Title VII wage discrimination claim, the Court rejects that argument because the standards under the two statutes are different. Title VII does not require proof of equal work on jobs requiring substantially equal skill, effort, and responsibility. Instead, it requires proof that the employer discriminated against the employee with respect to her compensation because of her sex, and Trawick could carry that burden by proving that Carmike paid her lower compensation than a similarly situated male employee and that her sex was a motivating factor that prompted Carmike to take that action. Moreover, Carmike did not object to the verdict as inconsistent before the jury was dismissed, and "failure to object to an inconsistent verdict before the jury is excused forfeits the objection." *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1259 (11th Cir. 2015).

follows:  Trawick is only entitled to punitive damages if she proved that Carmike "acted with either malice or with reckless indifference toward . . . Trawick's federally protected rights." Jury Instructions 26, ECF No. 198.  The Court further instructed the jury that an "employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where the managerial employees' acts are contrary to the employer's good faith efforts to comply with the law" but that "the mere existence of policies prohibiting discrimination does not preclude punitive damages if the policies are ineffective."  *Id.* at 27.  Here, there was enough evidence presented at trial to support the jury's conclusion that a Carmike employee acting in a managerial capacity either acted with malice or with reckless indifference to Trawick's federally protected rights and that Carmike's anti-discrimination policies were ineffective.  Therefore, Carmike is not entitled to judgment as a matter of law on Trawick's claim for punitive damages.  Carmike's Rule 50(b) motion is denied.

## II.  Trawick's Motion for Attorney's Fees

As the prevailing party in this action, Trawick may recover "a reasonable attorney's fee . . . as part of the costs." 42 U.S.C. § 2000e-5(k).  Trawick seeks a fee award of $676,951.40, asserting that this amount is the product of her legal team's reasonable hourly rates and the hours they

reasonably expended on this matter, with reductions to account for time spent on unsuccessful claims and issues. Carmike does not dispute that Trawick is the prevailing party in this action or that she is entitled to recover a reasonable attorney's fee, but Carmike does challenge the amount Trawick seeks. Carmike makes four main arguments in support of a reduction: (1) there should be a downward adjustment to account for Trawick's contingency fee arrangement, (2) the hourly rate for Caroline Harwell is too high, (3) some of the requested hours were not reasonably expended, and (4) the Court should make a downward adjustment to the lodestar to account for Trawick's unsuccessful claims.

"Fee-shifting statutes allow counsel for the prevailing party to recover a reasonable fee." *In re Home Depot Inc.*, 931 F.3d 1065, 1082 (11th Cir. 2019). "A reasonable fee is one sufficient to attract competent counsel to represent the case, but not one that provides a windfall for attorneys." *Id.* In statutory fee-shifting cases like this one, the lodestar method is the "guiding light." *Id.* at 1081 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). The lodestar "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "There is a strong presumption that the

lodestar yields a reasonable fee . . . ." *In re Home Depot Inc.*, 931 F.3d at 1082.

Carmike argues that Trawick's lodestar request is unreasonable because Trawick had a contingency fee arrangement with her attorney providing for a 40% recovery, and she only achieved a judgment of $367,117.79. Carmike suggests that the Court should impose a 60% across-the-board reduction to the requested fee based on the contingency fee arrangement. Carmike did not cite any binding precedent in support of this argument.[3] The Court is not persuaded that a reduction based solely on the existence of a contingency fee contract between Trawick and her counsel is appropriate here. Carmike lodged no strong objection to the hourly rates sought by Trawick, and they clearly fall within the prevailing market rates in the community. To

---

[3] The Fifth Circuit has listed twelve factors that a court should consider in determining a reasonable fee—including "whether the fee is fixed or contingent." *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). But, the "Supreme Court has made it plain that 'most, if not all,' of the factors used to determine a reasonable fee are already subsumed in the lodestar," and it "opted to use the lodestar method instead of the *Johnson* factors to calculate a reasonable attorney's fee under fee-shifting statutes." *In re Home Depot Inc.*, 931 F.3d at 1083, 1090 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)). The *Johnson* factors may "be used to determine whether an upward (or downward) adjustment, i.e., a multiplier, was warranted," but such adjustments are made only where the lodestar does not "reflect the true market value of the attorney's performance." *Id.* at 1090. The *Johnson* factors may also be used "to determine 'what is a "reasonable" hourly rate and what number of compensable hours is "reasonable."'" *Id.* at 1091 (quoting *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam)). So, "after counsel proposes an hourly rate based on the prevailing market rate in the community, courts may consider the *Johnson* factors to determine if the proposed rate accurately reflects the true worth of counsel." *Id.*

discount those rates because counsel was willing to forego a fee if she recovered nothing on the claims is contrary to the remedial purposes of Title VII and the law that permits the prevailing party to recover a reasonable fee. Authorizing the prevailing party to recover her attorney's fees ensures that the employee who was the victim of unlawful discrimination is made whole even after settling up with her lawyer. The existence of a contingency fee contract standing alone cannot overcome this remedial principle.

This does not mean that a plaintiff can recover whatever her counsel charges her; a defendant cannot be gouged based upon the contract between a plaintiff and her counsel. The fee must be reasonable. But neither should a defendant be gratuitously awarded a windfall solely because of the existence of a contingency fee contract. As the Supreme Court observed, a reasonable attorney's fee "contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). So, if a fee agreement provides "less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount." *Id.* The Court rejects Carmike's argument that it should make an across-the-board

reduction to the lodestar request based on the contingency fee agreement, and it will calculate the lodestar.

Trawick presented evidence of reasonable hourly rates for employment discrimination cases in the Middle District of Georgia, and Carmike does not object to the claimed hourly rates of the following members of Trawick's legal team: lead counsel Mary A. Prebula ($425.00), contract attorney Jennifer S. Ivey ($250.00), law clerk Canon T. Corbitt ($175.00), and legal assistant/paralegal Holly L. Smith ($145.00). Carmike does object to the $215.00 claimed hourly rate of Caroline L. Harwell, who served as an unlicensed law clerk from August 1, 2017 to November 16, 2017 and as a first-year associate attorney from November 17, 2017 to August 15, 2018. Trawick presented evidence that the market rate for a first-year associate in the Middle District of Georgia is between $150.00 and $225.00 per hour, and the market rate for an unlicensed law clerk is between $150.00 and $175.00 per hour. Legare Aff. ¶¶ 18-19, ECF No. 203-10; Newsom Aff. ¶¶ 17-18, ECF No. 203-11. Based on this evidence, the Court finds that $215.00 is a reasonable hourly rate for Harwell's work as a first-year associate attorney, and $175.00 is a reasonable hourly rate for Harwell's work as an unlicensed law clerk.

The next step in figuring the lodestar is to determine the number of hours reasonably expended. "Time spent is reasonable,

and thus compensable, if it would be proper to charge the time to a client." *In re Home Depot Inc.*, 931 F.3d at 1087. "As with a client, counsel should not include in the lodestar hours that are 'excessive, redundant or otherwise unnecessary.'" *Id.* (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988)). The Court must "deduct unnecessary or redundant hours and time spent upon 'discrete and unsuccessful claims' from the calculations." *Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996) (quoting *Norman*, 836 F.2d at 1301-02). But, the lodestar computation *should* include time spent on claims that "involve a common core of facts" or are "based on related legal theories." *Hensley*, 461 U.S. at 435. "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Pruning duty, however, does not rest exclusively upon the Court. "Those opposing fee applications have obligations, too. In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *Id.* (quoting *Norman*, 836 F.2d at 1301).

Here, Trawick's counsel represents that she removed hours that were duplicative or not reasonably necessary for the effective representation of Trawick. Counsel also asserts that she removed time spent on Trawick's unsuccessful claims to the extent that the time was not intertwined with Trawick's successful Title VII wage discrimination claim.[4] Counsel further avers that she removed all time entries related to her unsuccessful spoliation and contempt motions, her unsuccessful motion for reconsideration, and her unsuccessful motion to disqualify. And, counsel significantly reduced time associated with her partially successful motion to compel. She also reduced time associated with the EEOC charge, Complaint, and summary judgment response to account for unsuccessful claims.[5] Carmike argues that Trawick's counsel did not prune enough. The Court must therefore resolve the dispute.

A. Time Spent on Unsuccessful Claims

Carmike contends that the Court should exclude time that it contends Trawick's legal team spent on discovery and trial preparation for unsuccessful claims. Carmike points to a

---

[4] Trawick originally brought a claim under the Fair Labor Standards Act but dismissed it by stipulation. She also brought a failure to promote claim, a state law negligent retention claim, and a claim under the Family Medical Leave Act; Carmike was granted summary judgment as to these claims. Finally, Trawick brought a Title VII retaliation claim and a claim under the Equal Pay Act, but the jury found against her on these claims.

[5] Based on the Court's review, Trawick removed 164 time entries from her lodestar request, she cut 102 entries by 70% or more, and she cut one entry by 50%.

handful of time entries that it contends are solely for these unsuccessful claims, plus it argues for an across-the-board reduction of 60% to account for Trawick's unsuccessful claims.[6] Carmike's chief argument is that trial preparation on issues that primarily supported Trawick's unsuccessful Title VII retaliation claim should be excluded because the retaliation claim was not closely related to her successful Title VII wage discrimination claim. Carmike also argues that there should be an additional reduction on top of the reduction that Trawick's counsel made to entries for the EEOC charge, Complaint, and summary judgment response to account for the fact that several other claims were dismissed before trial.

As discussed above, the Court must deduct time spent on discrete, unsuccessful claims. These are claims "that are based on different facts and legal theories" that can be treated "as if they had been raised in separate lawsuits." *Hensley*, 461 U.S. at 434-35. But if claims for relief "involve a common core of facts," then "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435. "Such a lawsuit cannot be viewed as a series of discrete

---

[6] Carmike acknowledges that Trawick's counsel excluded time entries that specifically state they are for claims that were unsuccessful. Carmike pointed to an additional eighty-eight entries that are not associated with any specific cause of action, arguing that they might be attributable to work on unsuccessful claims.

claims." *Id.* The courts "have expansively treated claims as being related." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1579 (11th Cir. 1987). Here, all the claims that were presented to the jury involve a common core of facts regarding Trawick's employment and the chauvinistic corporate culture at Carmike. The evidence Trawick presented regarding the investigation that resulted in her termination could be viewed as circumstantial evidence that Carmike used Trawick's sex as a motivating factor when it set her compensation, even though the jury did not find that Trawick carried her burden on all of the elements of her retaliation claim. Beyond the reductions made by Trawick's counsel, the Court does not find that the other work performed by counsel can be broken down into tasks necessary only for distinct claims. The evidence largely overlapped; much of the evidence relevant to Trawick's claims that were disposed of before trial was part of the same common core of facts regarding Trawick's employment and the corporate culture at Carmike.[7] Carmike has failed to help the Court by pointing to any time entries that were solely for discrete, unsuccessful claims. The

---

[7] Carmike also argues that the time spent on discovery was excessive due to "Plaintiff's stubbornness in pursuing discovery and meritless theories and claims." Def.'s Resp. to Pl.'s Mot. for Att'y's Fees 13, ECF No. 225. The Court does not find it appropriate to make deductions based on alleged "excessive discovery." Stubbornness was not one-sided in this case. Zealous advocacy on both sides perhaps extended this litigation, but the Court does not find Trawick's counsel's conduct in tirelessly seeking to vindicate her client's rights should result in the forfeiture of compensation for those efforts.

Court therefore declines to deduct any hours from the lodestar calculation on this basis.

### B. Time Spent on Unsuccessful Motions and Responses

Trawick agrees that her counsel should not be compensated for completely unsuccessful motions, such as the unsuccessful spoliation and contempt motions, the unsuccessful motion for reconsideration, and the unsuccessful motion to disqualify. Carmike points out that Trawick's counsel did not deduct 0.3 hours by Ms. Harwell on April 26, 2018 for work on the unsuccessful motion for spoliation sanctions; that time shall not be included in the lodestar. Carmike also notes that Trawick's attorney spent 0.8 hours drafting a motion to exceed page limits that was never filed. Trawick reduced the time sought for this unfiled motion to 0.24 hours, but she did not explain why this time sought is reasonable or state that she would charge a paying client for such work, so this time shall be excluded from the lodestar.

Carmike highlights that although counsel subtracted the time Ms. Prebula spent on the actual motion to disqualify Mr. Gristina, she did not subtract the hours spent on researching the issue before she filed the motion. It was not unreasonable for Ms. Prebula to research the issue, and the Court declines to strike these hours. Carmike further contends that Trawick should not recover time spent on her largely unsuccessful

responses to Carmike's motions in limine regarding "me too" evidence, statistical evidence, comparators other than Shannon Sailors, spoliation of evidence, and alleged sexual harassment. Based on the Court's review, counsel did exclude time that was billed exclusively for these issues. Counsel did not deduct general entries for motion in limine responses, which Carmike suspects may include time spent on the unsuccessful responses. Even if some of the time was spent on unsuccessful issues, the Court cannot find that the small amount of time on motion in limine responses was unreasonable. Finally, Carmike argues that Ms. Prebula did not subtract enough time associated with her partially successful motion to compel and that she should have deducted time spent on the Rule 56(d) motion that the Court encouraged her to file. The Court rejects these arguments.

C. Vague and Incomplete Time Entries

Carmike objects to fifty-five time entries as impermissibly vague because they are for things like "email re status" and "telephone calls with counsel re issues."[8] The Court understands that in *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198 (11th Cir. 2012) (per curiam), a panel of the Eleventh Circuit found no abuse of discretion for

---

[8] In support of this argument, Carmike cites *Norman*, contending that it rejected bare time entries like "research applicable law." Carmike's citation does not support this contention. *Norman* does state that "the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.

applying a 10% reduction for block billing that lumped several tasks in single entries and included vague entries like "working with [John Doe]" and "continuing work on case." *Id.* at 203-04 (alteration in original). Though some of counsel's entries here lack detail, they do permit Carmike and the Court to understand the basic reason for each time entry. The Court declines to reduce these entries.

Carmike also points out that several entries are incomplete on at least one of Trawick's exhibits, arguing that it is impossible to tell what is included. Carmike is correct that the time entries are cut off on Exhibit A, the original bill, but they are not cut off on Exhibit D, billing by individual, so Carmike should have been able to determine what tasks are covered by each entry. The Court declines to make reductions on this basis.

### D.  Redundant or Excessive Time Entries

Carmike identified a number of time entries that it contends are redundant or excessive. First, Carmike objects to the 99.3 hours (reduced to 74.8) that it contends Mr. Corbitt and Ms. Harwell billed solely for responding to Carmike's statement of material facts. Based on the Court's review, most of these time entries are for work on the response to the statement of material facts *and* the summary judgment response. The Court finds this time reasonable.

Second, Carmike points out that Mr. Corbitt billed more than forty hours to summarize the deposition of Shannon Sailors.[9] Given that the deposition only took about eight and a half hours to conduct and that Mr. Corbitt was able to summarize a comparable deposition in half the time, the Court finds that a 50% reduction should be made to these time entries.

Third, Carmike notes that in the days leading up to trial, Trawick's trial team spent significant time preparing witness outlines and exhibits. It is not unusual for multiple lawyers to expend considerable time on such tasks within a week or two of the trial date or to communicate with each other regarding these tasks, and the Court does not find that this amount of time was excessive or redundant.

Fourth, Carmike objects to the fact that Ms. Prebula, who was Trawick's lead counsel and has the highest hourly rate, performed much of the work instead of delegating more tasks to one of her associates (who was only employed with Ms. Prebula until August 2018), a contract attorney, or a part-time unlicensed law clerk. Given the small size of Ms. Prebula's firm and the relative experience of the members of her team, it was not unreasonable for Ms. Prebula to perform much of the work.

---

[9] According to Carmike, Mr. Corbitt billed 42.2 hours for this task. Based on the Court's review, Mr. Corbitt billed 44.5 hours.

Fifth, Carmike objects to 1.5 hours Ms. Prebula billed on August 11, 2018 for "Review Defendant USB purporting to be exhibits" even though she later stated to the Court that she did not review the USB drive. Ms. Prebula clarified that this time entry was for her response to Carmike's inadvertent disclosure of privileged documents. According to Ms. Prebula, although an associate reviewed the files on the USB drive, she did not; rather, she reviewed the issue so that she could resolve it. The Court finds that this time was reasonably expended.

Sixth, Carmike asserts that it was excessive for Trawick's legal team to bill approximately forty hours for responding to Carmike's motion in limine regarding the designations for Lisa De La Cruz's deposition. While this is a large number of hours for the task of responding to each of Carmike's objections, it is not patently unreasonable. The Court declines to strike it.

Seventh, Carmike argues that because Trawick only referred to several days of Fred Van Noy's calendar at trial, she should not recover *any* time associated with the calendar or her forensic expert. It was not unreasonable for Trawick's legal team to review the contents of the calendar, and this time shall not be excluded.

Finally, Carmike argues that Ms. Prebula and Mr. Corbitt should not have billed 13.4 hours each for the final day of trial given that the jury was deliberating that day. The jury

started deliberating at 9:00 a.m., the jury returned a verdict late in the afternoon, and the Court adjourned at 6:48 p.m. Then, according to the time records, Trawick's counsel returned to Atlanta. Defendants did not object to the travel time and did not present any authority that it is unreasonable for a lawyer to bill a client for time spent in court waiting for a jury to return a verdict. The Court finds that this time was reasonably expended.

E. Time Spent on Clerical Tasks

Carmike pointed to ninety-three entries that it contends are for clerical tasks and argues that these entries should be excluded from the lodestar calculation. A court may make a reduction for clerical tasks billed at attorney or paralegal rates; the Supreme Court has noted that "purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer] rate" because "[s]uch non-legal work may command a lesser rate" and "[i]ts dollar value is not enhanced just because a lawyer [or paralegal] does it." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (quoting *Johnson*, 488 F.2d at 717). And the Eleventh Circuit has noted that "a fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." *Norman*, 836 F.2d at 1306.

The Court reviewed the time entries Carmike flagged as being clerical work performed by a paralegal or attorney or paralegal work performed by an attorney. Many of these entries fall into "a gray area of tasks that might appropriately be performed either by an attorney or a paralegal," and the Court declines to exclude them. *Jenkins*, 491 U.S. at 288 n.10. Twenty-five of the entries (63.53 hours), however, appear to be purely clerical: applying Bates numbers to documents, mailing and emailing correspondence, and downloading, organizing, and printing documents. Although Trawick contends that Ms. Smith served as "legal assistant/paralegal," and pointed to a reasonable hourly rate for Ms. Smith's paralegal work, *e.g.,* Legare Aff. ¶ 19, Trawick did not point to evidence of a reasonable hourly rate for purely clerical work. In the absence of such evidence, the Court awards the federal minimum wage of $7.25 per hour for these 63.53 hours, for a total of $460.59.

F.   Calculation of the Lodestar

Based on the foregoing considerations, the lodestar amounts to $659,433.28, as reflected in the table below:

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| Prebula | $425.00 | 969.465 | $412,022.63 |
| Ivey | $250.00 | 119.000 | $29,750.00 |
| Harwell – LC | $175.00 | 132.900 | $23,257.50 |
| Harwell – AA | $215.00 | 240.620 | $51,733.30 |
| Corbitt | $175.00 | 523.805 | $91,665.88 |
| Smith | $145.00 | 348.575 | $50,543.38 |
| Clerical | $7.25 | 63.53 | $460.59 |
| | **TOTAL** | **2,397.90** | **$659,433.28** |

G.   Carmike's Request for a Reduction to the Lodestar

After the Court calculates the lodestar, the Court may adjust the fee upward or downward based on the results obtained. *Hensley*, 461 U.S. at 434; *accord Norman*, 836 F.2d at 1302. The Court remains mindful of the "strong presumption" that the lodestar figure represents a reasonable fee. *In re Home Depot Inc.*, 931 F.3d at 1082.   But the Court also understands that even if the hours and rates are reasonable, a downward adjustment to the lodestar may be merited if the prevailing party was only partially successful in her efforts.   Carmike argues that Trawick was only partially successful because she only prevailed on one of her claims at trial; Carmike suggests a 60% reduction to the lodestar.   Carmike seeks this reduction in addition to any reduction in hours the Court makes for work on distinct unsuccessful claims.   Carmike's argument based upon a crude "percentage of victory formula" ignores the interrelated nature of all of the claims and the undisputed fact that Trawick recovered the maximum amount that she could recover regardless of how many boxes the jury checked in her favor on the special

verdict form. Since she popped the cap, she could have done no better.

In situations where a plaintiff is deemed "prevailing" even though she succeeded on only some of her claims for relief, the Court must address two questions. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which [s]he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434. Again, if a plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories," then "counsel's work on one claim will be unrelated to [her] work on another claim," and "no fee may be awarded for services on the unsuccessful claim." *Id.* at 434. In cases like this one where the plaintiff's claims for relief "involve a common core of facts," it is "difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435. "Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Moreover, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure

to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.*

As discussed above, all the claims that were presented to the jury and many of the facts underlying Trawick's claims that were disposed of before trial involve a common core of facts regarding Trawick's employment and the corporate culture at Carmike. So, Trawick did not fail to prevail on claims that were completely unrelated to her successful Title VII wage discrimination claim. And, Trawick obtained excellent results. Even if she had also prevailed on her Title VII retaliation claim that the jury rejected or her Title VII failure-to-promote claim that was dismissed before trial, Trawick likely could not have recovered any additional damages because of Title VII's cap.[10] For these reasons, the Court finds that Trawick achieved a level of success that makes the hours reasonably expended a

---

[10] Carmike points out that Trawick's counsel suggested that the jury award Trawick $100,000 per year as front pay for the next fifteen years. Although the Court asked the jury for an advisory verdict on the issue—which the jury did not have to reach in light of its finding on the Title VII retaliation claim—the Court was unlikely to award front pay in light of Trawick's nearly instant success finding gainful employment after she was terminated from Carmike. Had she prevailed on the other claims, Trawick would not have been entitled to recover any additional backpay, and she "maxed out" on emotional distress and punitive damages when the jury awarded her amounts in excess of Title VII's statutory cap. In other words, although the jury only found in her favor on one of her claims, the heart of her case was that she was discriminated against because she was female. And as to compensatory damages for sex discrimination, she received the maximum that she could have received even if they had found for her on all of her claims. Simply put, the final result could not have been much better. Regarding her compensation and the award of punitive damages, she completely prevailed as a practical matter.

satisfactory basis for making a fee award.  The Court declines
to make a downward adjustment to the lodestar.

**III. Trawick's Motion for Litigation Expenses**

In addition to her motion for attorney's fees, Trawick
filed a motion for litigation expenses of $14,553.18.  Federal
Rule of Civil Procedure 54(d) requires that a "claim for
attorney's fees and related nontaxable expenses must be made by
motion," and a motion seeking attorney's fees or nontaxable
expenses must "be filed no later than 14 days after the entry of
judgment."  Fed. R. Civ. P. 54(d)(2).  Trawick does not dispute
that her motion for nontaxable expenses was untimely.  She
contends that the Court should disregard the motion's
untimeliness based on excusable neglect because one of her
lawyers misunderstood the rules and thought that a motion for
nontaxable expenses could be filed contemporaneously with a bill
of costs, within thirty days after entry of the judgment under
Local Rule 54.2.2.

"Federal Rule of Civil Procedure 6(b) permits a district
court to review the merits of a motion that is pending before
it, despite its untimely nature, 'where the failure to act was
the result of excusable neglect.'"  *Corwin v. Walt Disney Co.*,
475 F.3d 1239, 1255 (11th Cir. 2007) (quoting Fed. R. Civ. P.
6(b)).  The Eleventh Circuit has "made clear that 'counsel's
misunderstanding of the law cannot constitute excusable

neglect.'" *Id.* (quoting *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 999 (11th Cir. 1997)). Thus, counsel's mistake regarding the deadline for filing the motion for nontaxable expenses was not the result of excusable neglect. The Court has no discretion to find otherwise, so the motion for litigation expenses is denied.

## IV. Trawick's Bill of Costs

Although Trawick may not recover nontaxable out-of-pocket litigation expenses because her motion was untimely, she is entitled to recover taxable costs. *See* Fed. R. Civ. P. 54(d)(1); 28 U.S.C. § 1920. Ordinarily, the Clerk would assess those costs, but to expedite resolution of all issues necessary to enter a final amended judgment, the Court evaluates Trawick's bill of costs and Carmike's objections. Trawick seeks $31,493.05 in taxable costs. Carmike objects to $24,040.36 of those costs.

Litigation costs other than attorney's fees "should be allowed to the prevailing party" unless a federal statute, the federal rules, or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1). "Under Rule 54(d), there is a strong presumption that the prevailing party will be awarded costs," although the costs may not exceed the limitations set out in 28 U.S.C. § 1920. *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007).

## A. Fees of the Clerk

"Fees of the clerk" are recoverable under 28 U.S.C. § 1920(1). Carmike does not object to taxation of the $400.00 filing fee, so Trawick may recover it.

## B. Fees for Service of Summons and Subpoena

"Fees of the . . . marshal," including fees for service of subpoenas, are recoverable. 28 U.S.C. § 1920(1); *accord* 28 U.S.C. § 1921(a)(1)(B). Private process server fees "may be taxed pursuant to §§ 1920(1) and 1921" if the fees do not exceed the rate charged by the U.S. Marshal. *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). The U.S. Marshal may charge $65.00 per hour for each item served. 28 C.F.R. § 0.114(a)(3). Carmike challenges most of Trawick's service fees.

First, Carmike points out that Trawick sought $120.00 for service of the summons, including a $55.00 "same day service" fee. Trawick did not explain why the rush fee was necessary or how it is recoverable, so she may only recover the $65.00 service fee.

Second, Carmike objects to fees for repeated attempts to serve Lisa De La Cruz. According to Trawick, De La Cruz evaded service, and process servers had to attempt to serve De La Cruz multiple times to effectuate service on her, waiting outside of her home and place of work for hours. Carmike objects to some of the costs as "surveillance" costs, but it is clear from the

invoices that this surveillance was in connection with attempting to serve a subpoena. The costs, however, shall be limited to the rate charged by the U.S. Marshal and shall not include rush fees or fees for investigating a tag number or conducting a skip trace because Trawick did not point the Court to any authority that such costs are recoverable as "Fees of the . . . marshal." Thus, Trawick may recover $870.00 for service (and attempted service) on De La Cruz.

Third, Carmike objects to the $50.00 fee for attempted service of a deposition subpoena on Fred Friedel because Friedel was never deposed in this action. Trawick argues that this fee is a "deposition cost" that was reasonably incurred because Carmike included Friedel on its "may call" witness list. While it is true that deposition-related costs for depositions necessarily obtained for use in a case are recoverable, Trawick did not point to any authority that she may recover costs associated with a deposition that never happened. She may not recover this cost.

Fourth, Carmike contends that Trawick should not recover fees for serving deposition subpoenas on Ricky Love and David Pflegl. Deposition-related costs are recoverable if a deposition was necessarily obtained for use in a case. Carmike submitted both depositions in support of its summary judgment motion, which suggests that the depositions were reasonably

necessary for use in the case. Trawick may recover these service costs, along with the costs of serving Sadie Marshall's deposition subpoena, although those costs shall be limited to the rate charged by the U.S. Marshal, for a total of $195.00.

Fifth, Carmike objects to the $60.00 fee for service of a deposition subpoena on Shannon Sailors because Carmike agreed to make Sailors available on a date certain, so it was not necessary to subpoena him. Trawick did not explain how this cost was necessarily incurred, so the Court denies it.

In summary, Trawick may recover $1,130.00 in service fees.

C.   Transcript Fees

Trawick seeks $19,040.55 in transcript costs. Carmike contends that this number should be substantially reduced. "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" are permitted. 28 U.S.C. § 1920(2). If a deposition relates to issues in the case and the deposition was used at trial or in conjunction with a summary judgment motion, then the costs are generally recoverable. *W&O, Inc.*, 213 F.3d at 621; *accord Watson v. Lake Cty.*, 492 F. App'x 991, 996 (11th Cir. 2012) (per curiam). Even if a deposition is not used as part of the prevailing party's case, deposition costs may be awarded if the prevailing party reasonably needed the deposition transcript to cross-examine the witness or if the witness had relevant information that was

within the bounds of discovery. *W&O, Inc.*, 213 F.3d at 621. Deposition costs are not recoverable, however, if they are "merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only." *Id.* at 620 (quoting *Goodwall Constr. Co. v. Beers Constr. Co.*, 824 F. Supp. 1044, 1066 (N.D. Ga. 1992)). Thus, while courts generally approve costs for reasonable court reporter fees and the original plus one copy of the deposition transcript, they do not approve costs that are incurred solely for the convenience of counsel, such as the costs of postage, condensed transcripts, and electronic transcript conversion. *Watson*, 492 F. App'x at 997 (finding abuse of discretion when district court taxed costs for shipment of depositions); *Kidd v. Mando Am. Corp.*, 870 F. Supp. 2d 1297, 1299 (M.D. Ala. 2012) (finding that fees for condensed transcripts and "depo drive" were not recoverable).

First, Carmike objects to the costs for the depositions of Ricky Love and David Pflegl, arguing that the depositions were unnecessary. Again, Carmike submitted both depositions in support of its summary judgment motion, which suggests that the depositions were reasonably necessary for use in the case, and both witnesses had relevant information that was within the bounds of discovery. The Court declines to find that their depositions were unnecessary.

Second, Carmike objects to paying deposition costs for extra copies of depositions. As discussed above, Trawick may recover the cost of the original plus one copy of each deposition. The Court therefore excludes the objected-to $50.00 "litigation support disc" fees from the depositions of David Passman and Frederick Van Noy. Carmike also asks the Court to exclude the entire transcript charges for the depositions of Shannon Sailors and Richard Hare because the invoice states that the fee covers "COMPUTER GENERATED TRANSCRIPT – ORIGINAL + COPY + MINI + ETRAN." There is no indication that Trawick paid any additional fee for the two extra computer-generated copies, and the Court declines to strike these charges.

Third, Carmike contends that Trawick should not recover costs of videotaping the deposition of Shannon Sailors. Trawick seeks to recover both the $2,248.26 transcript fee and the $1,025.00 fee for videotaping the deposition. Carmike argues that the electronically recorded video transcript was not necessarily obtained for use in the case. Trawick noticed the deposition as one that may be video recorded. Carmike did not object to the video recording of the deposition. The stenographic transcript was relied on by both sides at the summary judgment stage. And, Trawick argues that the video deposition was necessary because Sailors was beyond the subpoena power of the Court and Carmike did not agree to make Sailors

available to testify live until just before trial. The Court finds that Trawick adequately demonstrated that the costs of both the stenographic transcript and video recording were necessary and thus recoverable.

Fourth, Carmike objects to $337.00 in transcript charges for transcripts that were produced during trial, contending that the charge was not properly documented. The fact that counsel's check stub refers to the court reporter's estimate does not render the documentation insufficient. The Court declines to strike this amount.

Finally, Carmike contests the cost of expediting the transcript for the August 21, 2018 pretrial conference. Trawick acknowledges that the court reporter's invoice states that the transcript was expedited, but she points out that the court reporter charged the same amount—$1.20 per page—for the expedited transcript and a transcript that was not expedited. Therefore, the Court will not strike this amount.

In summary, Trawick may recover $18,940.55 in transcript fees.

### D. Witness Fees

"Fees and disbursements for . . . witnesses" are recoverable. 28 U.S.C. § 1920(3). A witness "in attendance at any court of the United States . . . or before any person authorized to take his deposition pursuant to any rule or order

of a court of the United States, shall be paid the fees and allowances provided by" statute. 28 U.S.C. § 1821(a)(1). These fees include an attendance fee of $40 per day and a mileage allowance. *Id.* §§ 1821(b) & 1821(c)(2). Carmike challenges Trawick's witness fees for Ricky Love and David Pflegl as unnecessary, but as discussed above, their depositions were reasonably necessary for use in the case. Carmike also objects to the witness fee for Jennifer Agnew as unsupported by any documentation. Trawick has produced sufficient documentation for this fee. Finally, Carmike objects to the witness fees because the amounts Trawick paid to the witnesses for mileage differ slightly from the amounts that would be due if mileage were calculated using the whole mileage numbers listed on the bill of costs multiplied by the mileage rate (which works out to be twelve cents in Carmike's favor). Trawick explained that she calculated mileage using mileage rounded to the nearest tenth of a mile, and the Court declines to adjust the witness fees on this basis. Trawick shall recover the requested $486.94 in witness fees.

E.   Copying Costs

Trawick seeks $9,953.06 in "printing" fees under 28 U.S.C. § 1920(3). Based on Trawick's documentation, she is actually seeking fees for photocopying documents. In support of her request, Trawick submitted a chart of photocopies and scans

totaling $9,953.06. Of this amount, counsel paid FedEx Office $782.36 for photocopies of trial exhibits. The remaining $9,170.70 is for in-house copies and scans of 26,237 pages.

"Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are recoverable. 28 U.S.C. § 1920(4). Carmike argues that it was unnecessary for Trawick to print her nearly 400 trial exhibits given that most of them were not introduced at trial. It was not unreasonable for counsel to be prepared with paper copies of all of her trial exhibits, so the Court declines to strike the $782.36 copying cost.

Turning to counsel's in-house copies, "in evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *W&O, Inc.*, 213 F.3d at 623. Although Trawick's counsel insists that all the copies were necessary, counsel's chart of in-house photocopies and scans does not provide any information about 26,237 pages that were copied or scanned, and it does not state the reason for any of the copies and scans. It is impossible to tell from the chart whether it includes copies that are solely for the convenience of counsel, like extra copies of filings and correspondence. Counsel does explain, though, that Carmike produced more than 7,000 pages of documents during discovery. Carmike's own trial

exhibit list contains nearly 900 exhibits, the pretrial order was almost 200 pages, and the parties filed more than fifty motions, although Trawick admits that some of them were not necessary for the case. Based on these considerations, the Court finds that it is reasonable to award Trawick costs for copying 10,000 pages. Carmike did not object to Trawick's rate of twenty-five cents per page for black and white copies, and the Court awards Trawick $2,500 for in-house copying costs. In total, the Court awards $3,282.36 in copying costs.

## CONCLUSION

As discussed above, Carmike's motion for judgment as a matter of law (ECF No. 221) is denied. Trawick's motion for attorney's fees (ECF No. 203) is granted to the extent that the Court awards Trawick attorney's fees in the amount of $659,433.27. Trawick is awarded taxable costs in the amount of $24,239.85. Trawick's motion for nontaxable litigation expenses (ECF No. 223) is denied because it was untimely. An amended judgment shall be entered in accordance with this Order in favor of the Plaintiff in the total amount of $1,050,790.91.

IT IS SO ORDERED, this 19th day of December, 2019.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA